FILED

NOV 12 2025

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO CLEVELAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | INFORMATION |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 5:25 CR 0 0 5 6 2 |
| | ) | Title 18, United States Code, |
| JONATHAN LEISSLER, | ) | Section 1343 |
| | ) | |
| Defendant. | ) | |

**JUDGE BARKER**

GENERAL ALLEGATIONS

At all times material to this Information, unless otherwise specified:

Defendant and the Victims

1. Defendant JONATHAN LEISSLER was a resident of Stow, Ohio, in the Northern District of Ohio, Eastern Division. Defendant had a personal bank account ending in x6022 with Huntington Bank. Defendant also controlled a business bank account ending in x0267 with Huntington Bank (collectively, the "Huntington Accounts").

2. Victim 1 was a distribution and industrial supply company headquartered in Warrensville Heights, Ohio, in the Northern District of Ohio, Eastern Division.

3. From on or about March 7, 2022, through on or about November 5, 2024, Defendant was employed as the Chief Financial Officer for Victim 1. In this role, Defendant was responsible for, among other things, managing payroll, expenditures, and accounts payable for Victim 1.

4. Victim 1 contracted with Company 1 to process its payroll. Victim 1 electronically submitted payroll records to Company 1's digital platform. Company 1 stored this data for Victim 1 on Company 1's servers in Georgia and South Dakota.

5. Based on the payroll records that Victim 1 provided, Company 1 directly deposited electronic payroll payments into Victim 1 employees' designated bank accounts.

6. Victim 2 was an online fundraising platform headquartered in Arlington, Virginia, that offered secure payment technology to support political campaign donations to individual candidates and organizations. Victim 2 required candidates to provide bank account information to Victim 2. Victim 2 then processed donations and deposited the funds into the candidate's bank account according to a set payment schedule. Victim 2 stored this data on its servers in Arlington, Virginia.

7. From time to time, candidates and donors requested that Victim 2 refund a donation. In the event of a refund request, Victim 2 fronted the money for the requested refund to the donor and then subsequently reimbursed itself by withdrawing that amount from the candidate's bank account on file with Victim 2.

8. Defendant was a candidate for Ohio State Senate, District 28, in the general election that occurred on November 5, 2024. Beginning in or around December 2023, Defendant used Victim 2's payment platform for his Ohio State Senate campaign. To use the platform, Defendant provided Victim 2 with bank account information for a Huntington bank account ending in x2579 in the name of "Leissler for Ohio" (the "Leissler for Ohio Account").

9. Victim 3 was the local chapter of a Fraternal Order of Police organization located in the Northern District of Ohio, Eastern Division. Victim 3 had a bank account ending in x8511 with Huntington Bank (the "Victim 3 Account").

10.     From in or around December 2021, through in or around November 2024, Defendant was the Treasurer for Victim 3.  In this capacity, Defendant was one of two individuals with access to the Victim 3 Account and possessed a debit card and checkbook for the Victim 3 Account.

### Scheme to Defraud

11.     From in or around February 2022, through in or around November 2024, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant JONATHAN LEISSLER devised and intended to devise a scheme and artifice to defraud the Victims and to obtain money and property from the Victims by means of materially false and fraudulent pretenses, representations, and promises, to wit: using his access to, and control of, the finances and accounts of Victim 1 and Victim 3 to embezzle funds, and causing Victim 2 to reimburse Victim 1 for some of the embezzled funds under false pretenses.

12.     The manner and means by which Defendant carried out the scheme included, but were not limited to:

*Stealing from Victim 1*

   a.   Defendant falsified and caused to be falsified Victim 1's payroll records by adding and causing to be added unauthorized payroll, bonus, commission, and miscellaneous payments from Victim 1 to Defendant, to which he knew he was not entitled.

   b.   Defendant caused Victim 1 to submit these false and fictitious payroll records to Company 1, which Defendant typically submitted from Victim 1's headquarters in Warrensville Heights, Ohio.

   c.   Based on the false and fictitious payroll records, Defendant caused Company 1 to deposit additional, unauthorized electronic payroll payments into Defendant's Huntington Accounts.

    d.  To perpetuate the scheme and avoid its detection, Defendant made and caused to be made false and fictitious entries in Victim 1's payroll records, accounts payable ledgers, and monthly financial statements, all of which were designed to hide and understate the cost to Victim 1 of Defendant's receipt of the unauthorized payroll payments.

*Stealing from Victim 2*

    e.  Defendant obtained unauthorized access to Victim 1's credit cards.

    f.  Defendant made donations to his Ohio State Senate campaign through Victim 2's platform using personal credit cards and by placing unauthorized charges on Victim 1's credit cards.

    g.  Defendant caused Victim 2 to refund the donations Defendant had made using personal credit cards and the unauthorized donations that Defendant had charged to Victim 1's credit cards.

    h.  To avoid repaying Victim 2 for reimbursing the charges he had made on personal credit cards and the unauthorized charges that Defendant had placed on Victim 1's credit cards, Defendant deleted the Leissler for Ohio Account from Victim 2's platform and provided Victim 2 with account information for a PNC bank account that Defendant knew did not exist.

*Stealing from Victim 3*

    i.  Defendant made unauthorized withdrawals and expenditures from the Victim 3 Account.

    j.  To perpetuate the scheme and avoid its detection, Defendant regularly reported at Victim 3 meetings that the Victim 3 Account balance was significantly higher than Defendant in fact knew it to be.

4

      k.      Defendant used the embezzled funds from Victim 1 and Victim 3 to enrich himself and his family members, including to expend stolen funds on private chartered flights, campaign advertising, a downpayment for a vacation property in South Carolina, vacation and travel expenses, mortgage payments for both the vacation property and a residential home, vehicles, credit card payments, cryptocurrency mining equipment, and start-up expenses for Defendant's side businesses.

13.      The acts caused by Defendant in furtherance of the scheme, in the Northern District of Ohio, Eastern Division, and elsewhere, included, but were not limited to, the following:

      a.      On or about the dates listed below, Defendant caused Victim 1 to transmit via interstate wire false and fictitious payroll records to Company 1 that added unauthorized payroll, bonus, commission, and miscellaneous payments from Victim 1 to Defendant, each transmission constituting a separate act in furtherance:

| No. | Approximate Date | Description of Wire Transmission |
|---|---|---|
| 1 | April 20, 2022 | Transmission of April 22, 2022 payroll records from Victim 1 to Company 1 |
| 2 | May 4, 2022 | Transmission of May 6, 2022 payroll records from Victim 1 to Company 1 |
| 3 | November 30, 2022 | Transmission of December 2, 2022 payroll records from Victim 1 to Company 1 |
| 4 | June 14, 2023 | Transmission of June 16, 2023 payroll records from Victim 1 to Company 1 |
| 5 | January 10, 2024 | Transmission of January 12, 2024 payroll records from Victim 1 to Company 1 |
| 6 | April 17, 2024 | Transmission of April 19, 2024 payroll records from Victim 1 to Company 1 |
| 7 | May 7, 2024 | Transmission of May 9, 2024 payroll records from Victim 1 to Company 1 |
| 8 | August 21, 2024 | Transmission of August 23, 2024 payroll records from Victim 1 to Company 1 |
| 9 | October 30, 2024 | Transmission of November 1, 2024 payroll records from Victim 1 to Company 1 |

b. On or about the dates listed below, Defendant caused Company 1 to issue additional, unauthorized electronic payroll payments in the approximate gross amounts listed below, the net pay of which were subsequently deposited into Defendant's Huntington Accounts, each issuance constituting a separate act in furtherance:

| No. | Approximate Date | Approximate Gross Amount |
|---|---|---|
| 1 | April 22, 2022 | $5,040.00 |
| 2 | May 6, 2022 | $5,174.00 |
| 3 | December 2, 2022 | $5,087.00 |
| 4 | December 2, 2022 | $5,087.00 |
| 5 | December 2, 2022 | $10,000.00 |
| 6 | December 2, 2022 | $10,000.00 |
| 7 | June 16, 2023 | $6,200.00 |
| 8 | June 16, 2023 | $6,200.00 |
| 9 | June 16, 2023 | $6,200.00 |
| 10 | June 16, 2023 | $6,200.00 |
| 11 | June 16, 2023 | $6,200.00 |
| 12 | June 16, 2023 | $6,200.00 |
| 13 | June 16, 2023 | $6,132.00 |
| 14 | June 16, 2023 | $6,132.00 |
| 15 | June 16, 2023 | $6,132.00 |
| 16 | June 16, 2023 | $6,132.00 |
| 17 | June 16, 2023 | $6,132.00 |
| 18 | June 16, 2023 | $6,132.00 |
| 19 | January 12, 2024 | $7,500.00 |
| 20 | January 12, 2024 | $7,500.00 |
| 21 | January 12, 2024 | $7,500.00 |
| 22 | January 12, 2024 | $7,500.00 |
| 23 | January 12, 2024 | $7,500.00 |
| 24 | January 12, 2024 | $7,500.00 |
| 25 | January 12, 2024 | $7,500.00 |
| 26 | January 12, 2024 | $7,500.00 |
| 27 | January 12, 2024 | $7,500.00 |
| 28 | January 12, 2024 | $7,500.00 |
| 29 | April 19, 2024 | $2,000.00 |
| 30 | April 19, 2024 | $20,000.00 |
| 31 | April 19, 2024 | $20,000.00 |
| 32 | April 19, 2024 | $20,000.00 |
| 33 | April 19, 2024 | $20,000.00 |
| 34 | April 19, 2024 | $25,000.00 |

| No. | Approximate Date | Approximate Gross Amount |
|---|---|---|
| 35 | April 19, 2024 | $2,500.00 |
| 36 | May 9, 2024 | $10,000.00 |
| 37 | May 9, 2024 | $14,385.00 |
| 38 | May 9, 2024 | $14,385.00 |
| 39 | August 23, 2024 | $15,000.00 |
| 40 | August 23, 2024 | $10,000.00 |
| 41 | August 23, 2024 | $15,000.00 |
| 42 | August 23, 2024 | $15,000.00 |
| 43 | August 23, 2024 | $10,000.00 |
| 44 | August 23, 2024 | $10,000.00 |
| 45 | August 23, 2024 | $10,000.00 |
| 46 | August 23, 2024 | $10,000.00 |
| 47 | August 23, 2024 | $10,000.00 |
| 48 | August 23, 2024 | $10,000.00 |
| 49 | August 23, 2024 | $10,000.00 |
| 50 | November 1, 2024 | $10,000.00 |
| 51 | November 1, 2024 | $10,000.00 |
| 52 | November 1, 2024 | $10,000.00 |
| 53 | November 1, 2024 | $10,000.00 |
| 54 | November 1, 2024 | $10,000.00 |
| 55 | November 1, 2024 | $10,000.00 |
| 56 | November 1, 2024 | $10,000.00 |
| 57 | November 1, 2024 | $10,000.00 |
| 58 | November 1, 2024 | $10,000.00 |
| 59 | November 1, 2024 | $10,000.00 |

14. As a result of the foregoing scheme and artifice, the Victims were defrauded and sustained combined losses in at least the approximate amount of $4,598,118.39.

## COUNTS 1-3
(Wire Fraud, 18 U.S.C. § 1343)

The United States Attorney charges:

15. The allegations contained in Paragraphs 1 through 14 of the Information are realleged and incorporated by reference as if fully set forth herein.

16. On or about the following dates, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant JONATHAN LEISSLER, for the purpose of executing and

7

attempting to execute the scheme and artifice to defraud described above, transmitted and caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, to wit: the following interstate wire transmissions from Victim 1's headquarters in Warrensville Heights, Ohio, to a Company 1 server in Georgia or South Dakota, each transmission constituting a separate count of this Information:

| Count | Date | Description of Wire Transmission |
|---|---|---|
| 1 | May 7, 2024 | Transmission of May 9, 2024 payroll records from Victim 1 to Company 1 |
| 2 | August 21, 2024 | Transmission of August 23, 2024 payroll records from Victim 1 to Company 1 |
| 3 | October 30, 2024 | Transmission of November 1, 2024 payroll records from Victim 1 to Company 1 |

All in violation of Title 18, United States Code, Section 1343.

DAVID M. TOEPFER
United States Attorney

By: *[signature]*
Elliot Morrison, Chief
White Collar Crimes Unit